# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FLOYD GRIMES,**

    **Plaintiff,**

**v.**                                **CASE NO:**

**VIVINT, INC.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, FLOYD GRIMES, (hereinafter "Plaintiff" or "Mr. Grimes"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, VIVINT, INC. (hereinafter "Defendant," or "Vivint") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race and age as well as retaliation in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; and the Age Discrimination in

Employment Act of 1967 ("ADEA").

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race and age, and retaliated against him in violation of his rights under Title VII and the ADEA.

3.      As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pinellas County, Florida.

## PARTIES

8.     Plaintiff is a 53-year-old Black male.

9.     Plaintiff is a member of a class protected against discrimination and retaliation based on his race and age under Title VII and the ADEA.

10.    During the period from October 2020 until May 26, 2023, Defendant employed Plaintiff.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII and the ADEA.

13.     The Defendant, VIVINT, INC., is a Foreign Profit Corporation with a principal place of business located at 4931 N 300 W, Provo, UT 84604.

14.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pinellas County, Florida.

15.     At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII and the ADEA.

16.     Accordingly, Defendant is liable under Title VII and the ADEA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On October 31, 2023, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant alleging, among other things, race, and age discrimination as well as retaliation.

19.     On November 16, 2023, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 540-2023-04330) against Defendant.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## <u>GENERAL ALLEGATIONS</u>

21.    In October 2020, Mr. Grimes began his employment with Vivint. He held multiple positions throughout his employment, including Tech Support Specialist (Tier 1), Advanced Tech Support Specialist (Tier 3), Advanced Issue Resolution, and finally, Performance Specialist. He initially reported to Krystina Ree.

22.    Mr. Grimes excelled in his position and always received positive performance evaluations.

23.    In or about May 2022, Spencer Winters became Mr. Grimes' new supervisor. Additionally, a few months later, Antonio Salmeron became the new Associate Manager.

24.    During Mr. Grimes' first meeting with Mr. Salmeron, the latter told Mr. Grimes that he was a good worker but that he could "come off as an asshole" sometimes. He also stated that Mr. Grimes was a "BFR," a term with multiple definitions, all of which have negative connotations in the context it was said.

25.    In or about April 2023, Mr. Winters went on paternity leave. He

also stopped being a supervisor in Mr. Grimes' department, as he was hired by Vivint's finance team prior to his paternity leave. Around this time, Mr. Grimes' team was dissolved.

26.    Mr. Winters returned to work before the end of his paternity leave, and he apologized to Mr. Grimes for not giving him notice of his abrupt departure. He also informed Mr. Grimes that his transfer to the finance department had been canceled. However, Mr. Winters never explained why management had rescinded his transfer. All this information took Mr. Grimes by surprise because since the start of Mr. Winters' paternity leave, he had been told that Mr. Winters would resume his duties upon his return.

27.    Around this time, Mr. Salmeron issued a directive to Mr. Grimes and all other Performance Specialists not to send any issues to Advance Resolution. Mr. Grimes abided by this directive.

28.    Near the end of April 2023, Mr. Salmeron asked Mr. Grimes to complete a special project for him. It was standard practice to work on special projects outside regular business hours, so Mr. Grimes decided to log in to the company's platform and do some work on a Sunday.

29.    On or about May 10, 2023, Mr. Salmeron called Mr. Grimes into

a meeting and asked him why he had worked on a Sunday. Mr. Grimes explained to him that it was standard practice and that Mr. Winters had authorized it in the past. Nevertheless, Mr. Salmeron accused Mr. Grimes of doing work unrelated to company business outside regular work hours. Mr. Grimes denied these accusations, but Mr. Salmeron got visibly upset and called Mr. Grimes a liar. In the end, Mr. Salmeron wrote Mr. Grimes zero-tolerance infraction. Mr. Salmeron also placed Mr. Grimes on a final written warning and told Mr. Grimes that if he committed another infraction, he could be terminated.

30.     Mr. Grimes immediately reached out to Human Resources to appeal the disciplinary action. He reported Mr. Salmeron for his abuse of authority, discrimination, targeted harassment, and disparate treatment. It is worth noting that no one else had ever been written up under a zero tolerance infraction. Moreover, the disciplinary action taken against Mr. Grimes was not at all how supervisors were supposed to handle first-time issues with employees. HR told Mr. Grimes that they would look into the matter and follow up with him.

31.     In the meantime, Mr. Grimes continued to update HR on Mr. Salmeron's behavior. Mr. Salmeron would jump into chats to tell employees

that they only had two minutes to respond to messages.

32.     After Mr. Winters came back, he told Mr. Grimes that there was a team competition going on where the winner could take their family on a cruise. However, Mr. Winters let Mr. Grimes know that Mr. Salmeron had barred him from going on the cruise should his team win. Mr. Grimes asked if the same applied to other employees on a final warning, but he was the only one barred from going. Coincidentally, Mr. Grimes was the only Black employee in his department and the oldest by 20 years.

33.     On May 26, 2023, Mr. Winters gave Mr. Grimes an exceptionally positive performance review.

34.     That same day, at 8:00 p.m., Mr. Grimes got called into a meeting. During the meeting, Mr. Winters informed Mr. Grimes that Mr. Salmeron had allegedly found some calls that Mr. Grimes had transferred to Advance Issue Resolution without permission.  Because of this, the company decided to terminate Mr. Grimes' employment.

35.     In reality, the calls in question were transferred to Advance Resolution while Mr. Winters was on paternity leave and prior to Mr. Salmeron's directive not to transfer calls to Advance Resolution.

36.     Additionally, during the meeting, Mr. Winters initially failed to

record the meeting, contrary to the policy requiring that calls be recorded. Mr. Winters started recording only after Mr. Grimes reminded him to.

37.    When Mr. Salmeron was explaining the reason behind Mr. Grimes' termination, Mr. Grimes accused Mr. Salmeron of plotting to terminate him. Mr. Grimes expressed his frustration, explaining that it did not matter what he said or did because Mr. Salmeron was going to terminate him for anything that he could think of just because he had the power to do so. Mr. Salmeron then stated, "That's right, and that is exactly how it is going to go!" Mr. Grimes then pointed out that Mr. Salmeron was abusing his power and discriminating against him, to which Mr. Salmeron replied, "Yes, and that's exactly how it's going to go!" Lastly, Mr. Grimes mentioned that he was going to contact HR. Mr. Salmeron laughed and asked, "Who, Jackson? You do that, cause this is exactly how it is going to go."

38.    Frustrated by the way he was being treated, Mr. Grimes decided to excuse himself from the meeting. However, the meeting kept going and continued to be recorded, unbeknownst to Mr. Salmeron and Mr. Winters. In the recording, they can be heard speaking to one another and discussing plans to fabricate incidents in order to terminate Mr. Grimes. They can be heard saying how HR Manager Jackson Miner advised them that they

needed to report three concrete incidents to be able to request Mr. Grimes'
termination. They can be heard further discussing how they sought out and
found information against Mr. Grimes. The basis of the meeting was that
they were contacted by another department, Advanced Issue Resolution,
who had informed Mr. Salmeron of the calls Mr. Grimes had transferred to
their department. It is undeniably suspicious how Mr. Salmeron and/or Mr.
Winters deemed it necessary to look for additional incidents if the Advanced
Issue Resolution team was the source of the write-up. Furthermore, Mr.
Salmeron specifically waited for Mr. Winters to return from his paternity
leave in order to have him write up Mr. Grimes for an incident that took
place two weeks prior to Mr. Winters' paternity leave. It would not be an
exaggeration to say that Mr. Salmeron retaliated against Mr. Grimes for
filing a complaint against him with HR. Additionally, Mr. Winters explicitly
stated that he did not know about Mr. Grimes' complaint against Mr.
Salmeron until the day of Mr. Grimes' termination, and he further stated that
Mr. Salmeron made him handle the incident regarding the calls. At the time,
Mr. Winters had been back from paternity leave for at least 14 days, yet he
did not reprimand Mr. Grimes for the transferred calls until Mr. Salmeron
told him to.

39.    Taking all this into consideration, it is clear that Mr. Salmeron and Mr. Winters conspired against Mr. Grimes and harbored discriminatory motives, as Mr. Salmeron did not want a Black male on his team. Dissolving Mr. Grimes' team would have meant kicking out one of the other Performance Specialists, who was a younger white female.

40.    The day of his termination, Mr. Grimes reached out to Jake Wright, the HR coordinator who had been assisting him with his complaint against Mr. Salmeron. Mr. Grimes expressed his concerns about possible retaliation from Mr. Salmeron. He mentioned how Mr. Salmeron had given him an extensive list of strict rules that he expected him to adhere to under threat of termination. Mr. Grimes had already confirmed that this kind of disciplinary action went against company policy, as outlined in Vivint's employee manual, which specified that even individuals on a final warning should not be treated as if they were on a final warning for all violations unless these violations were directly related to the initial incident that resulted in the write-up.

41.    On May 26, 2023, Mr. Wright responded to Mr. Grimes, stating that he would follow up with him shortly. To this date, Mr. Grimes has not heard back from him.

42.    On May 30, 2023, Jackson Miner informed Mr. Grimes that he would take over his case and investigate his claims against Mr. Salmeron. Mr. Grimes could not help but find it suspicious how, during his termination meeting, Mr. Salmeron mentioned Mr. Miner and already seemed to know that he would take over Mr. Grimes' case.

43.    On May 31, 2023, Mr. Miner sent an email to Mr. Grimes stating that the company would uphold the decision to terminate him.

<u>**COUNT I**</u>
<u>**AGE DISCRIMINATION IN VIOLATION OF ADEA**</u>

44.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45.    Plaintiff's age was a determining factor in Defendant's decision to terminate him.

46.    Defendant knowingly and willfully discriminated against Plaintiff based on his age in violation of the ADEA.

47.    As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered from a loss of income and benefits for all of which he should be compensated.

**WHEREFORE**, Plaintiff, FLOYD GRIMES, demands judgment against Defendant and requests the following relief:

A.    Back pay;

B.    Front pay;

C.    Liquidated damages pursuant to 29 U.S.C. § 626(b);

D.    Attorney's fees and costs; and

E.    Other such relief as may be appropriate to effectuate the purposes of the ADEA.

<u>COUNT II</u>
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Race Discrimination**

48.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

49.    Plaintiff is a 53-year-old Black male.

50.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

51.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes

one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

52.   Plaintiff was subjected to discrimination at the hands of Associate Manager Antonio Salmeron and his supervisor, Spencer Winter. Mr. Salmeron falsely accused Mr. Grimes of breaking company policy, unfairly wrote him up, placed him on a final warning, and took disciplinary actions against him that went against Vivint's employee manual. When Mr. Grimes filed a complaint against Mr. Salmeron with HR, Mr. Salmeron conspired with Mr. Winters to get Mr. Grimes fired.

53.   Defendant knew or should have known of the discrimination suffered by Plaintiff.

54.   Defendant violated Title VII by subjecting Plaintiff to discrimination because of his race by failing to promptly correct the discriminatory behavior of Mr. Salmeron and Mr. Winters and eventually terminating Plaintiff's employment.

55.     The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under Title VII.

56.     Defendant's actions constitute discrimination in violation of Title VII.

57.     As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, FLOYD GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, VIVINT, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on his race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT III**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Retaliation**

58.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

59.     Plaintiff is a 53-year-old Black male.

60.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

61.     At all times material herein, Defendant employed, and continues to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

62.     Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

63.     At all times material herein, Defendant employed Plaintiff.

64.     Mr. Salmeron subjected Plaintiff to adverse employment actions by terminating his employment in retaliation for filing a complaint against him with HR.

65.     The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

66.     As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

67.    Defendant violated Title VII by, among other things, failing to promptly correct Mr. Salmeron's retaliatory conduct once it learned of it.

68.    Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

69.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under Title VII.

70.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under Title VII, according to proof.

**WHEREFORE**, the Plaintiff, FLOYD GRIMES, requests trial by jury of

all issues so triable as of right, demands judgment against the Defendant, VIVINT, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for filing a complaint with HR regarding the retaliation he suffered at the hands of Mr. Salmeron;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate measures to overcome the effects of the retaliation he has endured;

C.     Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.     Award Plaintiff all other damages available under Title VII,

including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 13th day of February 2024.

_/s/ Jason W. Imler, Esq_____
Jason W. Imler
Florida Bar No. 1004422
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Attorneys for Plaintiff